UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:19-CV-67-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| PAT'S SNACK BAR, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Joe Hand Promotions, Inc. seeks a default judgment against Defendant Pat's Snack Bar, LLC and its owners, Defendants Charles Stivers and Tyler Pennington, in this cable piracy action. As Plaintiff has demonstrated default judgment entitlement per Rule 55(b)(2), and no additional evidence is needed to calculate the proper sum of damages, the Court grants the sought default judgment to the extent, and on the terms, outlined in this Order.

**A. Background**

Joe Hand Promotions—a corporation that commercially distributes and licenses closed-circuit sporting event viewing to bars, restaurants, etc.—filed this suit against Manchester, Kentucky restaurant Pat's Snack Bar and its owners in March 2019. DE #1 (Complaint). Joe Hand alleges that, on July 30, 2016, Pat's broadcasted an Ultimate Fighting Championship (UFC) match (specifically, the *Ultimate Fighting Championship 201: Lawler v. Woodley* ticket) without licensing the associated transmission rights from Joe Hand, despite Joe Hand being the exclusive domestic UFC distributor.[1] *Id.* at ¶¶ 8–13; *see* DE #15-5 (Commercial Licensing Agreement). The

---

[1] The satellite transmission of the program broadcast is encrypted, or "scrambled," to prevent public use. DE #15 at 5. Plaintiff would provide properly licensed recipients, upon fee payment,

1

Complaint pleads resulting violations of federal communications laws, 47 U.S.C. §§ 553 and 605. DE #1 at ¶¶ 16–19. The Complaint alternatively sought statutory damages under either § 553 or § 605; Joe Hand specifies, in its default judgment motion, that it ultimately elects to pursue only § 605 relief.

Plaintiff filed Rule 4-compliant proof of service on Pat's and Stivers in April 2019.[2] In June 2019, as Plaintiff had not yet proved service upon Pennington, the Court ordered it to show cause per Rule 4(m) why it should not dismiss Pennington from the case. DE #9. Joe Hand demonstrated that it had indeed served Pennington within the Rule 4(m)-prescribed period. DE ##10, 11, 12.[3] Despite Plaintiff's proper and timely service of all three Defendants, per the record, no Defendant has appeared, answered or responded to the Complaint, or otherwise participated in the case. The Clerk thus entered default against each Defendant in July 2019. DE #14. Joe Hand now seeks default judgment entry, DE #15, and no Defendant has responded to the request.

**B. Default Judgment**

Default entry by the Clerk, under Rule 55(a), necessarily precedes default judgment application under Rule 55(b). *See, e.g.*, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345,

---

"the electronic decoding equipment and the satellite coordinates necessary to receive the signal." *Id.* Plaintiff—to identify and address broadcast transmission theft—would typically engage auditors to visit and observe unauthorized locations believed to be broadcasting a program sans license. *Id.* at 5–6. One such auditor, Jessica Harris, noticed and informed Plaintiff of the unauthorized UFC exhibition at Pat's Snack Bar in this case. *Id.* at 6.

[2] The record reflects that Plaintiff personally served an on-duty manager of Pat's Snack Bar—a managing agent, consistent with Rule 4(h)(1)(B), on March 15, 2019. DE #7 at 3; *see Fondren v. Am. Home Shield Corp.*, No. 17-2519-SHM-DKV, 2018 WL 3061344, at *2 (W.D. Tenn. Mar. 15, 2018), *report and recommendation adopted*, No. 17-CV-2519-SHM-DKV, 2018 WL 1621045 (W.D. Tenn. Apr. 4, 2018) (finding an "HR Operations Specialist" authorized to accept service as a corporate agent under similarly-worded Tennessee Civil Rule 4.04); *cf. Harris v. Gland-O-Lac Co.*, 211 F.2d 238, 238 (6th Cir. 1954) (considering "managerial duties" characteristic of a "managing agent" for Rule 4 purposes). The record further reflects that Plaintiff personally served Stivers on that same date. DE #8 at 3.

[3] Plaintiff personally served Pennington on April 17, 2019. DE #10 at 3.

352 (6th Cir. 2003). Upon default entry, the defaulting party effectively admits all well-pleaded allegations in the Complaint, excluding allegations relating to unliquidated damages. *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 846 (E.D. Mich. 2006) (citing *Visioneering Construction v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)) ("Once a default is entered against a defendant, that party is deemed to have admitted all of the well pleaded allegations in the Complaint, including jurisdictional averments."); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) ("Where damages are unliquidated a default admits only defendant's liability and the amount of damages must be proved.") (citation omitted); *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.") (citation omitted). Defendants have thus functionally admitted the facts as Plaintiff alleges them.

Still, the Court must ensure that the well-pleaded allegations establish the defaulting parties' liability. *See, e.g.*, *Anderson v. Johnson*, 194 F.3d 1311 (Table), No. 98-1931, 1999 WL 1023753, at *2 (6th Cir. Nov. 4, 1999) ("Even if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."); *accord Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010); *Kelley v. Carr*, 567 F. Supp. 831, 840 (W.D. Mich. 1983); *Seme v. E & H Prof'l Sec. Co.*, No. 08-CV-01569, 2010 WL 1553786, at *2 (D. Colo. Mar. 19, 2010), *report and recommendation adopted*, No. 08-CV-01569-RPM, 2010 WL 1553788 (D. Colo. Apr. 16, 2010). "Facts not established by the pleadings, or claims which are not well-pleaded, are not binding and cannot support a judgment." *Kelley*, 567 F. Supp. at 840 (citations omitted).

The factual allegations in this case (as substantiated by the DE #15-attached affidavits, contract, and other evidence) establish Pat's Snack Bar's § 605(a) violation.[4] Joe Hand demonstrates both that it had proprietary right to domestic commercial distribution of UFC fight viewing and that, on July 30, 2016, Pat's broadcasted the *Lawler v. Woodley* ticket to its patrons without acquiring the required licensing privilege from Plaintiff. Such unauthorized divulgence of the fight (itself an interstate communication) plainly establishes the bar's strict liability under § 605(a). *See, e.g., Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (explaining that § 605 "defines what constitutes the unauthorized publication or use of electronic communications" and "includes such prohibited practices as the divulgence of wire or radio communications by persons authorized to receive them to others who are not so authorized, and the interception of any radio communication by a person not authorized to receive that communication from the sender"); *DIRECTV, LLC v. Perugini*, 28 F. Supp. 3d 351, 355 (M.D. Pa. 2014) ("Section 605(a) prohibits the unauthorized divulgence of a satellite communication, even after lawfully receiving the communication, to unauthorized recipients, such as patrons.") (internal quotation marks omitted); *J & J Sports Prods, Inc. v. Orellana*, No. 11-0574, 2012 WL 3155728, at *4 (S.D. Tex. Aug. 2, 2012) (noting that "[a]ny unauthorized showing of the Event is a violation" because "[t]he FCA is a strict liability statute, so a plaintiff, as exclusive licensee, need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization"); *see* DE #1 at ¶ 1 (alleging Plaintiff's proprietary UFC distribution rights); DE #15-5 (UFC

---

[4] The facts likewise establish Defendants' liability under § 553; courts generally have found that either cable or satellite transmissions of pirated programs violate both § 553 and § 605. *See, e.g., Nat'l Satellite Sports, Inc.*, 253 F.3d at 914; *Joe Hand Promotions Inc. v. Orim, Inc.*, No. 110CV00743, 2010 WL 3931108, at *1 (N.D. Ohio Oct. 5, 2010); *Buckeye Cablevision, Inc. v. Sledge*, No. 3:03CV7561, 2004 WL 952875, at *1 (N.D. Ohio Apr. 8, 2004) (collecting cases). The sections provide for alternative relief. *See* 47 U.S.C. §§ 553(c)(3) and 605(e)(3)(C).

Licensing Agreement); DE #1 at ¶¶ 2, 12–14 (alleging Defendants' pirating of the broadcast); DE #15-2 (Joe Hand Aff.) at ¶¶ 11–13 (same); DE #17 (Harris Aff.) (affirming that she personally and directly observed the violative activity).

Plaintiff further establishes, via the admitted Complaint allegations and supporting evidence accompanying DE #15, that Owners Stivers and Pennington are individually liable for the bar's § 605(a)-violative infringement. *See, e.g., J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (noting that, for individual liability to attach, "the complaint must establish that the individual had a right and ability to supervise the violations, as well as an obvious and direct financial interest in the misconduct") (internal quotation marks and citation omitted); *Joe Hand Promotions, Inc. v. Wright*, 963 F. Supp. 2d 26, 28 (D.D.C. 2013) (same); *Garden City Boxing Club, Inc. v. Extasis Corp.*, No. 07CV3853(NGG)(CLP), 2008 WL 3049905, at *8 (E.D.N.Y. Aug. 1, 2008) (same); see DE #1 at ¶¶ 3–4 (alleging that Stivers and Pennington, as principal owners of Pat's Snack Bar, had a right and ability to supervise its activities and a direct financial interest in them); DE #15-3 at 4 (Alcohol License) (listing Pennington as a "Partner[]"); *id.* at 5 (LLC Registration) (listing Pennington and Stivers as Pat's Snack Bar's sole members). As the sole members of this Kentucky LLC, Pennington and Stivers patently had a right and ability to control the activities of Pat's Snack Bar, as well as a direct and obvious financial stake in the bar's success. Accordingly, the Complaint's allegations support default judgment in all respects.

Even where the defaulting party's liability is established by the pleadings, though, the decision as to default judgment propriety remains committed to the Court's discretion. *See, e.g.*, *Riding Films, Inc. v. John Does 129-193*, No. 2:13-CV-46, 2015 WL 127912, at *1 (S.D. Ohio Jan. 8, 2015), *report and recommendation adopted*, No. 2:13-CV-46, 2015 WL 574277 (S.D. Ohio

5

Feb. 11, 2015) ("The mere determination of defendant's liability does not, however, automatically entitle plaintiff to default judgment. The decision to grant default judgment falls within a court's discretion."). In deciding whether to grant a default judgment, courts generally consider such factors as

> 1) possible prejudice to the plaintiff ; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citation omitted); *accord Malibu Media, LLC v. Doe*, No. 2:14-CV-1136, 2015 WL 2365507, at *1 (S.D. Ohio May 15, 2015), *report and recommendation adopted*, No. 2:14-CV-1136, 2015 WL 12734022 (S.D. Ohio June 5, 2015); *Psychopathic Records, Inc. v. Anderson*, No. 08-CV-15034, 2010 WL 4683470, at *1 n.2 (E.D. Mich. Nov. 10, 2010); *AF Holdings*, 976 F. Supp. 2d at 929; *Modern Jug Face, LLC v. Wright*, No. 2:13-CV-847, 2015 WL 5244461, at *1 (S.D. Ohio Sept. 9, 2015), *report and recommendation adopted*, No. 2:13-CV-847, 2015 WL 5882125 (S.D. Ohio Oct. 6, 2015). Finally, even where default judgment is supported and appropriate as to liability, "[w]here damages are unliquidated . . . the amount of damages must be proved." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (quoting *Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1026 (5th Cir. 1982) (en banc), *cert. denied*, 104 S. Ct. 79 (1983)).

The relevant considerations here weigh in favor of granting the sought default judgment. The Complaint's allegations are well-pleaded and establish liability, as discussed; further, the proof submitted demonstrates the statutory piracy claim's merit. Further, given the strict liability nature of § 605(a) and eyewitness viewing of the at-issue infringement, per Harris's affidavit, the facts supporting liability would not likely be subject to meaningful dispute, even if Defendants had participated in this action. The straightforward liability determination is, in this case, indeed likely

6

the reason for Defendant's failure to participate. Additionally, and perhaps most critically, Defendants' inexcusable failure to respond to the Complaint or otherwise participate in the case would certainly prejudice Plaintiff, if unable to pursue default remedies. As the record reflects, each Defendant personally received a summons, which explicitly warns that a failure to respond may lead to a default judgment. *See, e.g.*, DE #10 at 2. Nonetheless, armed with such knowledge, the Defendants have remained unresponsive. Default judgment, in these circumstances, is the apt result.

### C. Monetary Relief

The record contains enough evidence to ascertain Joe Hand's damages with reasonable certainty, as guided by statute; an evidentiary hearing is thus unnecessary under Rule 55. *See* Fed. R. Civ. P. 55(b)(2).[5] The Court awards the sought damages in part, based on the considerations discussed below; it also awards the justified and properly documented costs and attorneys' fees.

#### 1. Statutory Damages

A piracy claimant may elect to receive either its actual damages, or an amount within the statutorily prescribed ranges in either § 553 or § 605, but not both. Courts typically permit recovery

---

[5] *See, e.g.*, *Vesligaj v. Peterson*, 331 F. App'x. 351, 355 (6th Cir. 2009) (noting that a hearing is required where it is needed "in order to ascertain the amount of damages with reasonable certainty[]"); *Joe Hand Promotions, Inc. v. RPM Mgmt. Co. LLC*, No. 2:11-CV-377, 2011 WL 5389425, at *1 (S.D. Ohio Nov. 7, 2011) ("Although the court may conduct an evidentiary hearing to determine damages, an evidentiary hearing is not a prerequisite to the entry of default judgment if damages are contained in documentary evidence or detailed affidavits and can be ascertained on the record before the court."); *Hart v. Estes*, No. 3:17CV-317-CRS, 2018 WL 1914295, at *2 (W.D. Ky. Apr. 23, 2018) (citing 10A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 2688 (3d ed. 1998)) ("The court, in its discretion, need not hold a hearing on the motion, but may determine on the filings that default judgment on the claims is proper, and may fix damages where the plaintiff has provided sufficient documentary proof to establish the judgment amount."); *accord RQSI Glob. Asset Allocation Master Fund, Ltd. v. APERCU Int'l PR LLC*, No. 3:15-CV-00778-CRS, 2019 WL 1922052, at *4 (W.D. Ky. Feb. 22, 2019), *report and recommendation adopted*, No. 3:15-CV-778-CRS, 2019 WL 1922045 (W.D. Ky. Mar. 29, 2019).

under only § 605, as Joe Hand specifically seeks to do in this case. *See Joe Hand Promotions Inc.*, 2010 WL 3931108, at *2 (collecting cases). Section 605 provides for a base statutory recovery between $1,000 and $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). Joe Hand seeks $5,000. The amount awarded under this subsection, however, is within the Court's discretion. *See id.* (providing for an amount within the prescribed range "as the court considers just"); *Joe Hand Promotions Inc.*, No. 110CV00743, 2010 WL 3931108, at *2 ("The amount of damages awarded pursuant to 47 U.S.C. § 605 rests within the sound discretion of the Court."); *Buckeye Cablevision, Inc.*, 2004 WL 952875, at *2 (same). Many courts have tied the § 605(e)(3)(C)(i)(II) amount decision to the claimant's loss. *See, e.g.*, *Joe Hand Promotions, Inc. v. Williams*, No. CIV.A 307CV406JDM, 2010 WL 341513, at *2 (W.D. Ky. Jan. 22, 2010) (Had Billy's Place lawfully obtained the broadcast, the cost of the license for a bar of their size would have been $700 . . . The court therefore finds that the base amount of damages to be awarded is most appropriately fixed at the lowest end of the scale—at $1,000."); *Joe Hand Promotions, Inc. v. Pickett*, No. 5:15CV478, 2016 WL 3668162, at *3 (N.D. Ohio July 11, 2016) (awarding base statutory damages equal to the applicable licensing fee); *J & J Sports Prods., Inc. v. Zambrano*, No. 4:14CV960, 2015 WL 3682588, at *5 (N.D. Ohio June 12, 2015) (calculating statutory damages "based on what would have been a proper licensing fee"); *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-CV-276(CAR), 2009 WL 5031580, at *4 (M.D. Ga. Dec. 15, 2009) (" award[ing] statutory damages in an amount equal to the license fee Defendants would have paid if [they] had legally purchased the right to exhibit the Program"); *Joe Hand Promotions, Inc. v. Willis*, No. 5:08 CV 2786, 2009 WL 369511, at *2 (N.D. Ohio Feb. 11, 2009) (basing statutory damages on lost licensing fee).

  The Court is persuaded that this approach is reasonable, logical, and grounded in ample authority. *See also Nat'l Satellite Sports, Inc.*, 253 F.3d at 918 (analyzing base statutory damage

award propriety in terms of the licensing fee that the claimant lost and investigative and administrative costs the claimant incurred in addressing the piracy incident). In this case, investigator Jessica Harris approximated Pat's Snack Bar's maximum capacity at 50 people. *See* DE #17 at 1. Per the attached Rate Card, and consistent with Joe Hand's affidavit, the licensing fee for this establishment would have been $788. *See* DE #15-2 ¶ 7; DE #15-4 (Rate Card). Plaintiff alleges only one unauthorized transmission of the broadcast in question, and it does not claim any investigative costs. *Cf. Joe Hand Promotions, Inc.*, 2016 WL 3668162, at *3 (noting the plaintiff's lack of information surrounding investigative costs).

Joe Hand does, though, claim additional economic harm stemming from goodwill lost as a result of authorized establishments' unfair competition from Defendants' unauthorized interception. The Court finds this consideration fairly tied to loss, properly impacting determination of the base statutory award. *See, e.g.*, *Joe Hand Promotions, Inc. v. Rizzi*, No. 12-2526, 2013 WL 6243824, at *3 (W.D. Tenn. Dec. 3, 2013) ("[T]he Court begins with the actual damages from the violation, but also considers loss of goodwill from other establishments that properly purchased the Events but faced unauthorized competition from Rizzi[.]"); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (using the lost license fee "as a base for arriving at a statutory damage amount" but further considering, among other things, "the damage Kingvision [ ] likely suffered by the loss of goodwill from other establishments that purchased the Event properly and lost customers to the Pub or believe[d] that Kingvision misled them about who their competition for broadcasting the Event was that night[]"). Though difficult to quantify such intangible profit loss, courts have doubled or tripled the loss licensing fee to arrive at an amount that reasonably compensates the claimant for its full loss. *Kingvision Pay-Per-View, Ltd.*, 146 F. Supp. 2d at 961 (doubling the $2,625 licensing fee to arrive

9

at a pre-enhancement "initial statutory damages award . . . [of] $5,250"); *Joe Hand Promotions, Inc.*, 2013 WL 6243824, at *3 (tripling the "actual damages of $1,100" to account for lost goodwill and deter future piracy).

In this case, tripling the lost $788 rate fee, for a total base statutory award of $2,364, reasonably estimates Joe Hand's loss associated with Defendants' infringing conduct (including the lost licensing fee, lost goodwill resulting from authorized locations' unfair competition from Pat's, and reputational harm related to any public perception that Joe Hand misled viewers about authorized broadcast locations). The enhancement multiplier applied below accounts for any necessary punitive or deterrent impact.

## 2. Enhanced Damages

Plaintiff may collect enhanced statutory damages of up to $100,000, if Defendants' infringing activity "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" 47 U.S.C. § 605(e)(3)(C)(ii). Whether enhancement is appropriate, and the extent of any such enhancement, is discretionary. *Id.* Claiming that Defendants' violation was both willful and for the purpose of commercial or financial benefit, Joe Hand requests $20,000 in enhanced statutory damages (or, four times the base amount of statutory damages sought).

The Court agrees that the infringing conduct in this case was willful. As other courts have noted, it is inconceivable that Pat's Snack Bar could have inadvertently decoded the encrypted signal or accidentally altered cable services to result in the unauthorized broadcast. *See, e.g.*, *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets

connect themselves to cable distribution systems."); *Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, 2011 WL 4102314 at \*5 (M.D. Ga. 2011) ("[I]t is difficult for this Court to see how Defendants could have accidentally intercepted and exhibited the encrypted Program; the signal had to be unscrambled by some deliberate act[.]"). Moreover, Pat's Snack Bar advertised its broadcasting of the at-issue program on its Facebook page on the afternoon of the event. *See* DE #15-3 at 3. Such facts are inconsistent with any sort of accidental piracy. Nor do Defendants—having defaulted and, therefore, admitted the well-pleaded allegations against them—argue otherwise.

Defendants' Facebook advertisement further supports Plaintiff's claim that the violation was either for commercial advantage or financial gain. The post is wholly promotional in nature; it advertised that Pat's Snack Bar would have the UFC fight playing and promised "a weekend full of entertainment[.]" DE #15-3 at 3. Additionally, it entreated Facebook friends to share the post, offering entry into a drawing for a free t-shirt for those who did so; the post further included the bar's applicable weekend drink specials. *Id.* Any fair reading of the advertisement unequivocally confirms that Pat's Snack Bar used the UFC viewing to attract customers, who it hoped would spend money (perhaps on the drink specials mentioned) at the establishment, and, moreover, the bar offered potential prizes to those who circulated the promotional post to a wider social media audience. Pat's Snack Bar's promotional activity concerning the pirated fight strongly supports an enhanced damages award. Also relevant is Joe Hand's statement, via affidavit, that Pat's had posted about other unauthorized UFC viewing opportunities; this indicates that Defendants may be repeat violators. *See* DE #15-2 ¶ 14. Finally, the Court notes that, consistent with the bar's Facebook advertisement, the UFC fight was publicly and prominently displayed on one of the bar's two large-screen television sets on the evening in question. DE #17. These facts establish

11

that Defendants' conduct was both intentional and for the clear purpose of soliciting additional bar patrons, in an effort both to obtain a commercial advantage over those not displaying the fight and to financially benefit from the greater number of sales. Accordingly, some degree of damages enhancement is warranted.

The question, then, is the appropriate amount. Several factors persuade the Court that $20,000 is not justified, on this record. First, the bar was at only half-capacity, roughly, during the broadcast (which comprised only approximately 25 patrons). Second, there was no cover charge, or doorperson monitoring or charging for entry during the broadcast. Third, the intercepted UFC event was shown on only one of the bar's two television screens. And fourth, there is no evidence that Pat's Snack Bar charged increased amounts for food or beverages during the fight.[6] *See* DE #17; *cf. J & J Sports Prods., Inc. v. Saylis Hookah Lounge & Cafe, LLC*, No. 1:18-CV-00488, 2018 WL 6421292, at *2 (W.D. Mich. Nov. 19, 2018), *report and recommendation adopted*, No. 1:18-CV-488, 2018 WL 6416347 (W.D. Mich. Dec. 6, 2018) (awarding $30,000 in enhanced damages where there was "a $10 cover was charged at the business and the business remained at or near capacity all night"); *J & J Sports Prods., Inc. v. Palumbo*, No. 4:12CV2091, 2012 WL 6861507, at *4 (N.D. Ohio Dec. 12, 2012), *report and recommendation adopted*, No. 4:12 CV 2091, 2013 WL 162489 (N.D. Ohio Jan. 15, 2013) (finding $4,400.00 appropriate in enhanced damages—double the base statutory amount—where the 75-person establishment was roughly two-thirds full and the program was shown on five televisions, but there was no evidence that the

---

[6] Joe Hand notes that its auditors do not benchmark prices at infringing establishments, so Plaintiff simply does not know whether Defendants increased prices on the evening of the fight. DE #15-2 ¶ 20. Moreover, per Plaintiff, it is generally uncommon for establishments (authorized or not) to increase such prices during a viewing event. *Id.* Regardless, this consideration—while not warranting any reduction in otherwise-appropriate damages—does nothing to support a claim to an increased amount. It is, at most, neutral.

12

establishment charged admission, increased prices, or advertised the broadcast); *Joe Hand Promotions, Inc.*, 2009 WL 369511, at *2 (declining to enhance damages where the 55-person establishment was only one-third full and there was no doorperson or cover charge); *Joe Hand Promotions Inc.*, 2010 WL 3931108, at *3 (declining to enhance damages where there were only 15 patrons in an establishment with 60-person capacity and there was no doorperson or cover charge); *J & J Sports Prod., Inc.*, 2010 WL 4105663, at *3 (declining to enhance where the 60-person bar had only 22 guests, there was no cover charge, and the bar had only one television).

The evidence demonstrates that the unauthorized UFC broadcast played a part—but a relatively small one—in Pat's Snack Bar's efforts to increase patronage that night. The Facebook advertisement, the proof most indicative of Defendants' commercial-gain mindset toward the fight viewing, indeed also mentions musical guests that would be appearing at the bar over the weekend. The bar's decision to display the fight on only one of its two televisions further confirms that the program was not the establishment's lone customer draw. And, the bar remained roughly half-full during the investigator's entire stay. In comparison with other cases, these considerations suggest that $20,000 in enhanced damages would be unreasonably high.

The Court finds that an additional $6,000 in enhanced damages—just over two-and-a-half times the base statutory amount—is sufficient to satisfy the deterrence and punishment goals of § 605(e)(3)(C)(ii) in this case. Pat's, a relatively small bar, surely will feel the hit, and the amount fully compensates Joe Hand for its tangible and intangible losses. The bar's willful signal interception and public display (on one of its two televisions) of the pirated program, combined with its obvious promotional activity concerning the unauthorized broadcast, justifies the enhanced amount. Without evidence of more substantial commercial advantage or financial gain, whether solicited or actually received, though, the Court can justifiably award no more.

### 3. Costs and Fees

Lastly, § 605 mandates that courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Joe Hand seeks $785 in costs ($400 for case filing and $385 for service), plus $1,500 in attorneys' fees (for six hours of substantive legal work, at a rate of $250 per hour).[7] DE #15-3 (Lenox Aff.). Counsel represents that the $250 rate is reasonable based on specific experience and general rates in anti-piracy cases. *Id.* The costs and attorneys' fees are reasonable, per the record, and Joe Hand is thus statutorily entitled to recover them in this action.[8]

## D. Conclusion

For all of the reasons discussed, the Court **GRANTS** DE #15 **in part** and awards Plaintiff $2,364 in statutory damages, plus $6,000 in enhanced damages. Plaintiff also may recover $785 in costs and $1,500 in attorneys' fees. The total recoverable sum in this case is, thus, $10,649. A corresponding Judgment follows.

---

[7] Given the default judgment motion length and depth alone (including substantial case-specific argument, as well as ample citations generally applicable to anti-piracy cases such as this), the six-hour claim is justified. Counsel also expended time addressing the Court's orders inquiring about service proof, directing Harris affidavit filing, and requesting affidavit clarification. Based on the full record, six hours is a reasonable (indeed, likely conservative) timing estimate.

[8] The fees and costs sought are reasonably in line with those awarded in similar cases. *Cf. J & J Sports Prods., Inc. v. McMillan*, No. 1:17-CV-947, 2019 WL 1517107, at *5 (W.D. Mich. Feb. 22, 2019) (permitting recovery of 50.20 hours of legal work a rate of $245.00 per hour, plus $976.80 in costs); *J & J Prods., Inc. v. Strange Clouds Hookah Lounge, Inc.*, No. 17-11300, 2018 WL 783248, at *3 (E.D. Mich. Feb. 8, 2018) (awarding "$1,911.00 in attorney fees and $530.86 in costs" based on a $245 per hour rate); *Joe Hand Promotions, Inc. v. Dick*, No. 5:15-CV-00202-TBR, 2017 WL 1313792, at *3 (W.D. Ky. Apr. 5, 2017) (awarding a total of "$1,572.50 to cover Joe Hand Promotions' costs and attorney's fees); *J & J Sports Prods., Inc. v. Camacho*, No. 3:16-CV-00141-TBR, 2017 WL 2389409, at *3 (W.D. Ky. June 1, 2017) (awarding "$2,043.16 to cover J & J Sports Productions' costs and attorney's fees").

This the 21st day of April, 2020.

Signed By:
*Robert E. Wier* /s/ REW
United States District Judge